UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2018 DEC -4  A 10: 11

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

GOLDEN STATE FOODS
CORPORATION, a Delaware
corporation,

      Plaintiff,

v.

GEA SYSTEMS NORTH
AMERICA LLC f/k/a GEA
PROCESS ENGINEERING, INC., a
Maryland limited liability company;
ERIC JOHNSTON, an individual;
DMITRY KHOKLOV, an
individual; MARKUS WOLFF, an
individual; JEFF CHEN, an
individual; DOUG CAMPBELL, an
individual; KARL PARKINSON, an
individual; JOHN ANSBRO, an
individual;  NEILS ERIK OLSEN,
an individual; ALLIANZ GLOBAL
RISKS U.S. INSURANCE
COMPANY, an Illinois corporation;
ZURICH AMERICAN
INSURANCE COMPANY, an New
York corporation; AMERICAN
ZURICH INSURANCE
COMPANY, an Illinois corporation,

      Defendants.

Civil Action No.: 3:18-CV-1020

DEMAND FOR JURY TRIAL

## COMPLAINT

Plaintiff Golden State Foods Corporation ("Plaintiff" or "GSF") brings suit for breach of contract, breach of the covenant of good faith and fair dealing, fraud – intentional misrepresentation, fraud – negligent misrepresentation, breach of express warranty, violation of Alabama Deceptive Trade Practices Act under Alabama Code §§ 8-19-1 *et seq*., and unjust enrichment against GEA Systems North America, LLC f/k/a GEA Process Engineering, Inc. ("GEA"); Eric Johnston; Dmitry Khoklov; Markus Wolff; Jeff Chen; Doug Campbell; Karl Parkinson; John Ansbro; and Neils Erik Olsen (collectively "GEA Defendants"). GSF also brings suit for indemnification against GEA and Allianz Global Risks U.S. Insurance Company; Zurich American Insurance Company, and American Zurich Insurance Company (collectively "Insurance Defendants") and alleges as follows:

## THE PARTIES

1. Plaintiff Golden State Foods Corporation is, and at all relevant times was, a Delaware corporation with its principal place of business at 18301 Von Karman Avenue Suite 1100, Irvine, CA 92612.

2. Upon information and belief, Defendant GEA Systems North America, LLC f/k/a GEA Process Engineering, Inc. is, and at all relevant times was, a Maryland limited liability company with a principal place of business located at 9165 Rumsey Road, Columbia, Maryland 21045.

2

3.      Upon information and belief, Defendant Eric Johnston is, and at all relevant times was, a North Carolina citizen doing business in Durham, North Carolina, and serving as Regional Sales Manager – North Central and Southeast USA, for GEA.

4.      Upon information and belief, Defendant Dmitry Khoklov is, and at all relevant times was, a Canadian citizen doing business in Richmond, British Colombia, Canada, and serving as Project Manager for GEA.

5.      Upon information and belief, Defendant Markus Wolff is, and at all relevant times was, a Canadian citizen doing business in Richmond, British Colombia, Canada, and serving as Manager – Project Management – Freezer, for GEA.

6.      Upon information and belief, Defendant Jeff Chen is, and at all relevant times was, a Canadian citizen doing business in Richmond, British Colombia, Canada and serving as Manager – Project Management, for GEA.

7.      Upon information and belief, Defendant Doug Campbell is, and at all relevant times was, a Canadian citizen doing business in Richmond, British Colombia, Canada, and serving as Engineer for GEA.

8.      Upon information and belief, Defendant Karl Parkinson is, and at all relevant times was, a Wisconsin citizen doing business in Hudson, Wisconsin, and serving as Vice President of Food Applications – North America, for GEA.

3

9.      Upon information and belief, Defendant John Ansbro is, and at all relevant times was, a Pennsylvania citizen doing business in Columbia, Maryland, and serving as President of Sales for GEA.

10.     Upon information and belief, Defendant Neils Erik Olsen is, and at all relevant times was, a Wisconsin citizen doing business in Hudson, Wisconsin, and serving on the Executive Board for GEA.

11.     Defendant Allianz Global Risks U.S. Insurance Company is an Illinois corporation with a principal place of business located at 225 West Washington Street, Suite 1800, Chicago, Illinois 60606.

12.     Defendant Zurich American Insurance Company is a New York Corporation with a principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.

13.     Defendant American Zurich Insurance Company is an Illinois corporation with a principal place of business located at 1299 Zurich Way, Schaumburg, Illinois 60196.

14.     Defendants' actions alleged herein were those of themselves, their agents and/or licensees, and they are jointly and severally liable for the conduct of one another as though taken themselves.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over the claims and causes of action asserted in this Complaint pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff, on the one hand, and the Defendants, on the other hand, are citizens of different states for purposes of determining diversity jurisdiction.

16.     This Court has personal jurisdiction over GEA Defendants because GEA Defendants have extensive contacts with the State of Alabama, and as such, the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.  GEA Defendants have purposefully availed themselves of the privileges and laws of Alabama, and continuously, systematically, and purposefully conduct business within this District.  Moreover, GEA Defendants contracted to supply services and goods in this state for a GSF facility in Opelika, Alabama.

17.     Personal jurisdiction exists over all GEA Defendants and Insurance Defendants because they purposefully directed the intentional and harmful conduct alleged below at this forum, and purposefully availed themselves of the benefits of Alabama with respect to the claims alleged herein.

18.     Venue is proper in this judicial district under 28 U.S.C § 1391 because a substantial portion of the events of omissions giving rise to the claims occurred

in this district, the Agreement subject of this dispute was to be performed within this district, and Defendants reside in this district by virtue of being subject to personal jurisdiction in this judicial district by, among others, their repeated availment and direction of their activities toward this district.

## GENERAL ALLEGATIONS

19.    GSF engages in processing, production, and distribution of liquid products, meat products, produce, dairy, and other food items. It services more than 120,000 restaurants from its 41 locations on five continents.

20.    GEA is a supplier of production plants and systems for the food processing industry, among other industries.

21.    In early 2016, GSF expressed interest in purchasing spiral freezers from GEA for a production facility of hamburger patties GSF planned to build in Opelika, Alabama. GEA Defendants offered to include equipment, conveying, and installation to GSF from former cuber conveyors through spiral freezers to align with their business needs.

22.    GEA produced several project proposals for GSF. The operative project proposal (Number U121023) includes the specifications of GEA's A-Tec 30CC-2x17-112 Twin Belt spiral freezers (the "Spiral Freezers"). The proposal lists each Spiral Freezer's freezing capacity at 2 x 7,500 pounds of hamburger

patties per hour, i.e. 15,000 pounds per hour. In this proposal, GEA quoted a price of $3,516,400 for three Spiral Freezers.

23.    Based on GEA Defendants' representations, GSF agreed to purchase three of GEA's Spiral Freezers for use in freezing hamburger patties at its Opelika, Alabama facility. GSF designed and built the facility based on the specifications included in GEA's project proposal.

24.    In or around July 2016, GSF entered into an agreement to purchase three Spiral Freezers from GEA. Likewise, GEA agreed to install and service the Spiral Freezers at GSF's Opelika facility. The agreement is composed of the following documents: (1) AIA Document A141 Agreement with exhibits, (2) August 2, 2016 Project Proposal Number U121023, Rev. Q, and (3) Preferred Vendor Master Supply and Services Agreement (collectively, the "Agreement").

25.    Pursuant to the terms and conditions of the AIA Agreement, the governing law provision states the Agreement "shall be governed by the law of the place where the Project is located." (Ex. A Terms and Conditions, § A.13.1.1.) Because the Project is located in Opelika, Alabama, Alabama state law will apply.

**Repeated Malfunctioning of the Spiral Freezers**

26.    In August 2017, GEA represented that the installation of the Spiral Freezers was purportedly complete and GSF could start production of their

7

hamburger patties. The Spiral Freezers immediately demonstrated a repeated failure to reach the 15,000 pounds per hour production that GEA had promised.

27.    For example, the defective Spiral Freezers had a variety of issues, including but not limited to the following problems:

      a. The motor and gearboxes on the Spiral Freezers persistently failed and became inoperative for long durations of the 17-hour production shift (the industry standard).

      b. GSF discovered that GEA had installed motors and gearboxes that were designed for different mounting configurations than were being used. The motors had weep holes in the motor connection box that were designed for horizontal mounting. GEA improperly mounted the motors in the Spiral Freezers vertically, causing them to fill with water and short out.

      c. Coils in the Spiral Freezers had no frost abatement system and caused large amounts of ice to build up, thereby preventing free flow of air across coils and automatic shutdown. Air balance within the Spiral Freezers remain a continued problem. The Spiral Freezers are not capable of running a full day without defrost.

      d. Lower access doors were placed on the wrong side causing individuals to step on the product belts to gain internal access to the

8

Spiral Freezers. GEA failed to supply walk over platforms.

28.     GEA Defendants represented that they would remedy the defects in the Spiral Freezers. However, GEA Defendants left many substantial issues unresolved, including but not limited to the following:

a.  On October 13, 2017, GSF informed GEA that GEA's previous repair attempts had failed and that, as a result, hamburger patties were "flying around like popcorn." GEA tried and failed to fix the Spiral Freezers. GSF was forced to contact GEA again just six days later, on October 19, to complain of its reduced production output due to "patties being blown around, motors going out on a regular basis, sensors failing on a regular basis" and issues with maintaining freezer temperature.

b.  On December 1, 2017, GSF contacted GEA about the failure of four gear boxes due to water damage stemming from what GSF believed to be faulty product design and installation. This gear box failure severely restricted patty production, and GSF had to contact GEA again on December 11 to ask when gear box failures and other motor failures would be addressed.

c.  During the weekend of February 9-12, 2018, GSF shut down its production to allow GEA to implement a modification to correct air

balance issues. After making written commitments to have the appropriate team on hand to start up after the modifications, start up was delayed on February 13 as the only GEA personnel on site stated they did not have the expertise to deal with the issues that were present. GEA had promised to have a commissioning engineer at the facility from February 13 through 15. This engineer did not arrive on the 13th as promised, and GEA did not notify or explain its change in plans to GSF.

d. On February 22, 2018, GSF contacted GEA with a laundry list of issues requiring GEA's attention, including its inability to run the Spiral Freezers for a full production day. It was not until over two weeks later, on March 9, that GEA Vice President Karl Parkinson responded with only a promise to schedule a meeting with the GEA team for the following week.

29.    To date, the defective Spiral Freezers remain incapable of running a full 17-hour production shift and continue to malfunction.

30.    In good faith and based on GEA Defendants' continued assurances that the Spiral Freezers would be repaired, GSF continued making progress payments to GEA pursuant to the terms of the Agreement.

31.    GEA requested that GSF sign and return a Project

Acceptance/Warranty Certificate dated March 27, 2018. GSF rejected the Certificate citing the ongoing issues with the Spiral Freezers' performance. GSF also rejected GEA's June 4, 2018 demand for payment of the outstanding amount of $371,500.00 for the Spiral Freezers, pending resolution of the issues between the parties.

32.    GSF invested significant time, money, and energy to ensure the success of the Opelika facility, and GEA received substantial remuneration for its products. GEA Defendants, however, failed to provide working Spiral Freezers as they promised causing GSF substantial harm, loss of product, and damages arising from destruction of GSF's tangible property.

33.    GSF has incurred in excess of $9 million in losses, including but not limited to, a multi-million dollar demand against it for inability to fulfill a substantial supply contract due to the Spiral Freezers' malfunctions.

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against GEA Defendants)

34.    GSF incorporates by reference all other paragraphs contained in this Complaint as if stated herein.

35.    GSF and GEA Defendants entered into a binding, valid, and enforceable written contract – the Agreement – to purchase three Spiral Freezers from GEA, supported by adequate consideration. Pursuant to the Agreement, GEA

Defendants were responsible for installing and servicing the Spiral Freezers at GSF's Opelika facility.

36. GSF performed its obligations to GEA Defendants under the Agreement (or was excused from such performance).

37. Under the terms of the Agreement, GEA Defendants were under a duty to deliver and install three Spiral Freezers capable of freezing 15,000 pounds of hamburger patties per hour.

38. GEA Defendants have breached the Agreement by providing defective Spiral Freezers, including but not limited to, failing to provide Spiral Freezers that can consistently perform at the promised freezing capacity and failing to timely repair the pervasive malfunctioning components of the Spiral Freezers.

39. Despite GSF's repeated demands for GEA Defendants to bring the Spiral Freezers up to the required freezing capacity and repair their defects, GEA Defendants have failed to comply with their contractual obligations.

40. As a direct and proximate result of the GEA Defendants' wrongful acts, GSF has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.

41. Such acts have caused damages in an amount to be established at trial.

42. The Agreement provides that the prevailing party in an action to enforce this Agreement or because of breach of this Agreement is entitled to

12

payment of reasonable costs and expenses incurred, including expert fees and attorneys' fees. As a result of this action, GSF has incurred costs, expenses, and fees, and is entitled to recover in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against GEA Defendants)

43.     GSF incorporates by reference all other paragraphs contained in this Complaint as if stated herein.

44.     As described in the preceding paragraphs above, GSF and GEA entered into an Agreement for the sale, installation, and service of three Spiral Freezers.

45.     The Agreement contained an implied covenant of good faith and fair dealing whereby GEA Defendants promised to fairly, honestly, and reasonably perform its obligations under the Agreement.

46.     GEA Defendants breached the implied covenant of good faith and fair dealing by, among other things, failing to fulfill their contractual obligation to bring the Spiral Freezers up to the promised freezing capacity of 15,000 pounds of hamburger patties per hour and failing to timely repair the pervasive malfunctioning components of the Spiral Freezers.

47.    As a direct and proximate result of the GEA Defendants' wrongful acts, GSF has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill.

48.    Such acts have caused damages in an amount to be established at trial.

### THIRD CAUSE OF ACTION
### FRAUD – INTENTIONAL MISREPRESENTATION/SUPPRESSION
### (Against GEA Defendants)

49.    GSF incorporates by reference all other paragraphs contained in this Complaint as if stated herein.

50.    GEA Defendants misrepresented to GSF that the Spiral Freezers could produce the 15,000 pounds per hour production that GSF required to run its Opelika facility.

51.    On information and belief, GSF alleges that GEA Defendants' misrepresentations as to the Spiral Freezers production capacity were false, because GEA Defendants knew the Spiral Freezers could not perform as promised in their August 2, 2016 Project Proposal Number U121023, Rev. Q and various sales pitches, whereby GEA Defendants specifically stated to GSF that the Spiral Freezers had the capability to efficiently run for a 17-hour production shift. Instead, GEA Defendants' representations were a ploy to deceive and induce GSF to agree to purchase its products over other those of other companies under false pretenses.

14

52.     Furthermore, GEA made written commitments to send a qualified commissioning engineer to the Opelika facility to resolve ongoing technical issues with the Spiral Freezers, as discussed in Paragraph 27 above. However, this engineer did not arrive as promised, and GEA did not notify or explain its change in plans to GSF. The only GEA personnel on site stated they did not have the expertise to deal with the issues that were present. Thus, GEA intentionally misrepresented that it would send a qualified commissioning engineer to the Opelika facility and left GSF with inoperative Spiral Freezers.

53.     GSF is informed and believes, and thereon alleges, that at the time GEA Defendants made these statements to GSF and/or failed to disclose material facts to GSF, GEA Defendants knew they were false and misleading and they were designed to deceive and induce GSF to enter into the Agreement and/or falsely assure GSF that issues with the Spiral Freezers would be resolved.

54.     GSF justifiably relied on GEA Defendants' false statements and/or material omissions to its detriment.

55.     Had GSF known the actual facts, it would not have contracted with GEA Defendants and expended time, money and resources for the Spiral Freezers.

56.     As a direct and proximate result of GEA Defendants' fraudulent conduct, GSF has been damaged in an amount subject to proof at the time of trial.

57. GEA Defendants acts alleged above were willful, wanton, malicious, oppressive and undertaken with conscious disregard for the Plaintiff's rights and with intent to defraud Plaintiff, and justify the award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION
## FRAUD – NEGLIGENT MISREPRESENTATION/SUPPRESSION
### (Against GEA Defendants)

58. GSF incorporates by reference all other paragraphs contained in this Complaint as if stated herein.

59. GEA Defendants represented to GSF that its Spiral Freezers could produce the 15,000 pounds per hour production that Golden State Foods needed to run its Opelika facility.

60. On information and belief, GSF alleges that GEA Defendants' misrepresentations as to the Spiral Freezers production capacity were negligent, because GEA Defendants did not know whether the Spiral Freezers could perform as promised in their August 2, 2016 Project Proposal Number U121023, Rev. Q and various sales pitches, whereby GEA Defendants specifically stated to GSF that the Spiral Freezers had the capability to efficiently run for a 17-hour production shift.

61. GEA Defendants suppressed that they did not know whether the Spiral Freezers could perform as promised and GEA Defendants' representations

were false and made with a reckless disregard for whether they were true or not. GEA Defendants' negligent representations and suppression were a ploy to induce GSF to agree to purchase its products over other those of other companies.

62.    Furthermore, GEA made written commitments to send a qualified commissioning engineer to the Opelika facility to resolve ongoing technical issues with the Spiral Freezers, as discussed in Paragraph 27 above. However, this engineer did not arrive as promised, and GEA did not notify or explain its change in plans to GSF. The only GEA personnel on site stated they did not have the expertise to deal with the issues that were present. Thus, GEA negligently represented that it would send a qualified commissioning engineer to the Opelika facility and left GSF with inoperative Spiral Freezers.

63.    GSF is informed and believes, and thereon alleges, that at the time GEA Defendants made these statements to GSF and/or failed to disclose material facts to GSF, GEA Defendants knew and/or should have known their representations and suppression were false and misleading and they were designed to induce GSF to enter into the Agreement and/or falsely assure GSF that issues with the Spiral Freezers would be resolved.

64.    GSF justifiably relied on GEA Defendants' false statements and/or material omissions to its detriment.

65. Had GSF known the actual facts, it would not have contracted with GEA Defendants and expended time, money and resources for the Spiral Freezers.

66. As a direct and proximate result of GEA Defendants' fraudulent conduct, GSF has been damaged in an amount subject to proof at the time of trial.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### (Against GEA Defendants)

67. GSF incorporates by reference all other paragraphs contained in this Complaint as if stated herein.

68. An express statement of warranty is contained in the Agreement between GSF and GEA Defendants that the Spiral Freezers "will be free from defects" and "will conform to the requirements" of the Agreement. Agreement, § A.3.5.1. In addition, GEA Defendants gave GSF the August 2, 2016 Project Proposal Number U121023, Rev. Q, which detailed the specifications of the Spiral Freezers.

69. The Spiral Freezers did not perform as promised and did not meet the quality of the August 2, 2016 Project Proposal Number U121023, Rev. Q.

70. Moreover, GSF took reasonable steps to notify GEA Defendants with a reasonable time that the Spiral Freezers were not functioning as represented, and GEA Defendants received such notice.

71.     GEA Defendants failed to repair the Spiral Freezers as required by the warranty.

72.     As a direct and proximate result of the Spiral Freezers failure to operate as represented by GEA Defendants, and due to GEA Defendants' subsequent failure to repair the Spiral Freezers, GSF has been damaged in an amount subject to proof at the time of trial.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT**
**ALA. CODE §§ 8-19-1 *et seq.***
**(Against GEA Defendants)**

73.     GSF incorporates by reference all other paragraphs contained in this Complaint.

74.     GEA Defendants, by engaging in the wrongful conduct alleged herein, have engaged in unlawful, unfair or fraudulent business act(s) or practice(s) within the meaning of Alabama Code §§ 8-19-1 *et seq.*

75.     GEA Defendants' unlawful, unfair or fraudulent business act(s) or practice(s) have resulted in an unfair competitive advantage to GEA Defendants and have damaged GSF's business, by virtue of the acts alleged herein. GEA Defendants furthered their own interests by their fraudulent conduct and by violating their express contractual obligations to GSF.

76.     GEA Defendants' acts have been and continue to be immoral, oppressive and in violation of established public polices, including those embodied

in the Alabama Code. GEA Defendants' actions serve no legitimate business purpose and, if any possible legitimate purpose existed, it would be far outweighed by public policy and the significant harm GEA Defendants' acts have caused GSF.

77.     As a direct and proximate result of GEA Defendant's unlawful and deceptive trade practices, GSF has been damaged in an amount subject to proof at the time of trial. Additionally, GEA Defendants acts alleged above were willful, wanton, malicious, oppressive and undertaken with conscious disregard for the GSF's rights and with intent to defraud GSF, and justify the award of treble damages.

78.     GSF and the members of the public have suffered and, unless and until GEA Defendants' misconduct is enjoined, will continue to suffer irreparable harm for which there is no adequate remedy at law as a direct and proximate result of GEA Defendants' unfair conduct. GSF therefore is entitled to injunctive relief against GEA Defendants committing or engaging in further unfair business practices against GSF.

79.     Pursuant to Alabama Code § 8-19-10, GSF is entitled to its attorneys' fees and costs in pursuing this action.

## SEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (Against GEA Defendants)

80.    GSF incorporates by reference all other paragraphs contained in this Complaint.

81.    As set forth above, GSF conferred numerous benefits on GEA Defendants, including but not limited to millions of dollars in progress payments that GSF paid for the deficient and defective Spiral Freezers.

82.    At all material times hereto, GEA Defendants were aware of the benefits that were being conferred upon them by GSF and that GSF expected to be provided a working product in exchange for its progress payments.

83.    Notwithstanding the benefits conferred upon them by GSF, GEA Defendants have refused to provide GSF with a refund of any payments for the benefits GSF has conferred and GEA Defendants have wrongfully received.

84.    As a result of GEA Defendants' conduct, GSF has suffered a loss.

85.    GEA Defendants' retention of the benefits without reimbursement to GSF of the value of the benefits conferred is both unjust and inequitable. Accordingly, GSF is entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by GEA Defendants.

86.    As a direct and proximate result of GEA Defendants' conduct, GSF has suffered, and continues to suffer, substantial harm and damages in an amount subject to proof at the time of trial.

## EIGHTH CAUSE OF ACTION
### INDEMNIFICATION
### (Against GEA and Insurance Defendants)

87.    GSF incorporates by reference all other paragraphs contained in this Complaint.

88.    The Agreement expressly states that GEA "shall indemnify and hold harmless [GSF], its agents and employees from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death or to physical injury to or destruction of tangible property other than the Work itself, but only to the extent caused by the negligent acts or omissions of [GEA], a Contractor, a Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, but only to the extent that such claim, damage, loss or expense does not arise out of or relate to breach, negligence or willful misconduct of [GSF]." Agreement, § A.3.17.1.

89.    Section A.11.2.1 of the Agreement also specifically requires that GEA obtain commercial general liability insurance to cover their indemnification

obligations, including but not limited to, loss of product (i.e., thousands of GSF's hamburger patties) and damages arising from destruction of tangible property.

90.     On information and belief, Insurance Defendants provide commercial general liability insurance to GEA Defendants (Policy Number CGL2006329, Certificate Number 48260281) to cover their indemnification obligations under the Agreement.

91.     GEA Defendants' willful misconduct and gross negligence in the provision of products and services to GSF caused GSF significant pecuniary harm, substantial product loss, increased operational costs, and property damage due to their defective Spiral Freezers.

92.     Pursuant to the Agreement, GSF seeks indemnification from Insurance Defendants for the losses GSF incurred as a result of GEA Defendants' malfeasance, in an amount subject to proof at the time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, GSF demands the following relief:

1.     A judgment in favor of GSF, and against all Defendants on all counts;

2.     Damages, including enhancement up to treble damages, in an amount to be determined at trial, but no less than $9 million in monetary losses;

3.     Restitution of moneys and disgorgement of profits unjustly obtained by GEA Defendants;

4.     Enhancement and trebling of damages due to willfulness and bad faith;

5.     Exemplary and punitive damages;

6.     Pre-judgment interest at the legally allowable rate on all amounts owed;

7.     The entry of a preliminary and/or permanent injunctive relief barring GEA Defendants from committing or engaging in further unfair business practices against GSF; and

8.     Such other and further relief as this Court may deem just and proper to fully compensate GSF.

## DEMAND FOR JURY TRIAL

GSF, under Rule 38 of the Federal Rules of Civil Procedure, hereby demands a jury trial as to all issues that are so triable.

This 4th day of December, 2018.

Respectfully submitted,

/s/

Bruce L. Gordon (ASB-1897R70B)
John G. Dana (ASB-0493-A52J)
James A. Stewart (ASB-6201-E64S)
Attorneys for Plaintiff

**OF COUNSEL:**
GORDON, DANA & GILMORE, LLC
600 University Park Place
Suite 100
Birmingham, Alabama 35209
Telephone: (205) 874-7950
Facsimile: (205) 874-7960
bgordon@gattorney.com
jdana@gattorney.com
jstewart@gattorney.com

## PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:

GEA Systems North America LLC (Certified Mail)
c/o Cogency Global, Inc., Registered Agent
2 North Jackson Street
Suite 605
Montgomery, Alabama 36104

Allianz Global Risks U.S. Insurance Company (Certified Mail)
CT Corporation System
4701 Cox Road, Suite 285
Glen Allen, Virginia 23060

Zurich American Insurance Company (Certified Mail)
c/o Corporation Service Company, Inc., Registered Agent
641 South Lawrence Street
Montgomery, Alabama 36104

American Zurich Insurance Company (Certified Mail)
c/o Corporation Service Company, Inc., Registered Agent
641 South Lawrence Street
Montgomery, Alabama 36104

## PLAINTIFF WILL SERVE DEFENDANTS BY SPECIAL PROCESS SERVER AS FOLLOWS:

Eric Johnston (Process Server)
GEA Refrigeration North America
4319 South Alston Avenue
Suite 105
Durham, North Carolina 27713

Karl Parkinson (Process Server)
1110 Riverside Drive North
Hudson, Wisconsin 54016

John Ansbro (Process Server)
2693 Mayfair Lane
York, Pennsylvania 17408

Neils Erik Olsen (Process Server)
758 Woodcrest Drive North
Hudson, Wisconsin 54016

## PLEASE SERVE THE FOLLOWING DEFENDANTS ACCORDING TO THE REQUIREMENTS OF THE HAGUE TREATY/CONVENTION:

Dmitry Khoklov
GEA Refrigeration Canada, Inc.
2551 Viking Way
Richmond, British Columbia, V6V 1N4 Canada

Markus Wolff
GEA Refrigeration Canada, Inc.
2551 Viking Way
Richmond, British Columbia, V6V 1N4 Canada

Jeff Chen
GEA Refrigeration Canada, Inc.
2551 Viking Way
Richmond, British Columbia, V6V 1N4 Canada

Doug Campbell
GEA Refrigeration Canada, Inc.
2551 Viking Way
Richmond, British Columbia, V6V 1N4 Canada